[Cite as *State v. Smith*, 2023-Ohio-4504.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

DONALD R. SMITH,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 CO 0020**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2022 CR 285

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed in part. Reversed and Remanded in part.

---

*Atty. Vito J. Abruzzino*, Columbiana County Prosecutor, and *Atty. Shelley M. Pratt*, Assistant Prosecuting Attorney, Columbiana County Prosecutor's Office*,* for Plaintiff-Appellee and

*Atty. Christopher P. Lacich*, Roth, Blair, for Defendant-Appellant.

Dated: December 12, 2023

**HANNI, J.**

{¶1} Defendant-Appellant, Donald R. Smith, appeals from a Columbiana County Common Pleas Court judgment convicting him of one count of trafficking in drugs and one count of possession of drugs, following a jury trial.

{¶2} On August 5, 2021, on a tip from a confidential informant (CI), the Columbiana County Drug Task Force arranged a controlled drug buy by the CI from Appellant. The two arranged to meet at Mount Zion Lutheran Cemetery. They agreed in advance on a purchase of 3.5 grams of methamphetamine, known as a "ball" of methamphetamine, for $140. Detective Jordan Reynolds provided the CI with $140 in pre-recorded "buy money" to purchase the drugs.

{¶3} The task force listened in real time to Appellant and the CI. When they heard the two were engaging in a sexual encounter, which they had instructed the CI not to do, they converged on the cemetery. They found that Appellant had the $140 in pre-recorded buy money in his pocket. The CI did not have any drugs on her person. The CI's car and one other car were at the scene. The other car belonged to Appellant's wife. Appellant denied driving his wife's car to the cemetery. The task force knew this to be untrue, however, as Detective-Sergeant Brett Grabman had seen Appellant driving that car just prior to arriving at the cemetery. The officers arrested Appellant for obstructing official business. Appellant then admitted to driving the car and stated he was driving with a suspended license.

{¶4} The officers were then going to have the car towed. So they conducted a search of the car. In the trunk they found a black bag. Inside the bag, they found four baggies containing methamphetamine, a prescription bottle with Appellant's name on it containing more methamphetamine, Appellant's identification card, and $322 in cash. Appellant denied that the drugs were his.

{¶5} On May 11, 2022, a Columbiana County Grand Jury indicted Appellant on one count of trafficking in drugs, a third-degree felony in violation of R.C. 2925.03(A)(1), with a forfeiture specification; one count of trafficking in drugs, a fourth-degree felony in violation of R.C. 2925.03(A)(2), with a forfeiture specification; and one count of possession of drugs, a third-degree felony in violation of R.C. 2925.11(A), with a forfeiture specification. Appellant entered a not guilty plea and the matter proceeded to a jury trial.

**{¶6}** Plaintiff-Appellee, the State of Ohio, dismissed the first count of trafficking in drugs on the day of trial. The jury found Appellant guilty of the remaining two counts but found the money listed in the specifications was not subject to forfeiture. The court then proceeded to sentencing.

**{¶7}** The trial court sentenced Appellant to 16 months in prison for trafficking in drugs and 30 months in prison for possession of drugs in addition to a $5,000 fine. The court then found the two counts merged for sentencing purposes, however, resulting in an aggregate sentence of 30 months and a $5,000 fine.

**{¶8}** Appellant filed a timely notice of appeal on March 30, 2023. He now raises four assignments of error.

**{¶9}** Appellant's first assignment of error states:

THE TRIAL COURT COMMITTED PLAIN ERROR, OR REVERSIBLE ERROR AND AN ABUSE OF DISCRETION WHEN IT ALLOWED THE PROSECUTION WITNESS TO PARAPHRASE SELECT PORTIONS OF THE UNDERCOVER AUDIO CONTENTS OVER OBJECTION.

**{¶10}** In this assignment of error, Appellant takes issue with Detective Reynolds' testimony and Detective-Sergeant Grabman's testimony as it related to matters that were audio recorded during the controlled buy.

**{¶11}** Appellant first argues the trial court committed plain error by allowing Detective Reynolds to testify regarding the sex act. Appellant contends that allowing the detective to testify as to what he recalled hearing was prejudicial. He claims that since the audio recording still existed, the best evidence rule required that the recording be played for the jury.

**{¶12}** Detective Reynolds testified that there was an audio recording of the attempted controlled buy. (Tr. 283-284). He stated that usually there is also a video recording but in this case the video camera was covered by the CI's clothing. (Tr. 284).

**{¶13}** On direct examination, Detective Reynolds testified that while he was monitoring the encounter by way of the audio recording, an issue occurred and the task force converged on Appellant and the CI. (Tr. 252-253). He stated the issue arose due to "activities engaged in by the [CI]". (Tr. 253).

{¶14} On cross-examination, defense counsel questioned the detective as to whether the audio recording revealed that the CI was performing a sex act on Appellant. (Tr. 285). On redirect examination, the prosecutor asked the detective if he was able to hear who was requesting the sex act. (Tr. 294). The detective stated he heard Appellant ask to have sex with the CI multiple times and when she denied him, he asked her for oral sex. (Tr. 294). There was no objection to this testimony.

{¶15} Because there was no objection to Detective Reynolds' testimony, we must review this assignment of error for plain error. Plain error should be invoked only to prevent a clear miscarriage of justice. *State v. Underwood*, 3 Ohio St.3d 12, 14, 444 N.E.2d 1332 (1983). Plain error is one in which but for the error, the outcome of the trial would have been different. *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).

{¶16} Appellant contends the best evidence rule required that the State play the audio tape of the encounter between him and the CI instead of calling Detective Reynolds to testify regarding what he heard between them.

{¶17} Evid.R. 1002, known as the best evidence rule, provides: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required[.]"

{¶18} Detective Reynolds listened to the encounter between Appellant and the CI as it was occurring. He then testified as to what he heard.

{¶19} In *State v. Cechura*, 7th Dist. Columbiana No. 99 CO 74, 2001-Ohio-3250, while examining an argument based on the best evidence rule, this Court stated: "As aforementioned, the officer began testifying from memory. Appellant objected to his 'paraphrasing' and argued that the tape should be played instead. This objection should have been overruled because the officer's testimony from memory was competent primary evidence." While we concluded that a tape recording was more likely to be free from error than a witness testifying from memory, we found that when a person testifies from memory about a conversation they had that happened to be recorded, they are not attempting to prove the contents of a recording. *Id.*

**{¶20}** In reaching our decision, we relied in part on *State v. James*, 41 Ohio App.2d 248, 325 N.E.2d 267 (2d Dist.1974). In *James*, while examining whether witness testimony or a tape recording of the subject conversation was admissible, the Second Appellate District explained:

"Where proof of a conversation has been of two different kinds, namely, a recording thereof and testimony by witnesses who overheard it, it has ben [sic.] argued that both the recording and the testimony were the best evidence; however, the courts have not relegated either to a secondary position, but have held that both types of evidence are equally competent primary evidence, and that one is not to be excluded because of the existence of the other."

*James*, 41 Ohio App.2d at 250, quoting 29 American Jurisprudence 2d 496, Evidence, Section 436.

**{¶21}** Other courts have followed this same reasoning, finding both the recorded testimony and the witness's testimony who overheard the conversation to be admissible. *See State v. Dixon*, 152 Ohio App.3d 760, 2003-Ohio-2550, 790 N.E.2d 349, ¶ 22 (finding no merit with appellant's argument that tape was the best evidence of the two marijuana sales, thus precluding witness's testimony); *State v. Rinaldi*, 11th Dist. Lake No. 89-L-14-129, 1991 WL 70112, *4 (Apr. 26, 1991), (noting agent who witnessed and participated in the transaction was available to testify as to the taped conversation since she overheard it directly as it happened).

**{¶22}** Based on the above case law, there was no plain error in allowing Detective Reynolds to testify as to what he heard transpire between Appellant and the CI in real time.

**{¶23}** Appellant next argues the trial court abused its discretion by allowing Detective-Sergeant Grabman to testify as to what he learned by listening to the audio recording. He asserts that hearsay exceptions do not apply to statements heard by the witness second-hand. He points out that Detective-Sergeant Grabman was not listening to the audio of the controlled buy in real-time as was Detective Reynolds. Appellant again

contends that the best evidence rule required that the audio recording be played for the jury.

**{¶24}** Detective-Sergeant Grabman is the director of the Columbiana County Drug Task Force. As such, he was involved with the attempted controlled buy in this case. The detective-sergeant stated that he did not have a radio frequency to listen in real time to the controlled buy between Appellant and the CI as Detective Reynolds did. (Tr. 339-340). However, he later reviewed the audio recording. (Tr. 340). He described hearing a discussion between the CI and Appellant. (Tr. 340-341). The prosecutor then asked Detective-Sergeant Grabman if he recalled hearing any discussion related to drugs. (Tr. 341). Defense counsel objected to this question on the basis of hearsay. (Tr. 341). The trial court overruled the objection stating that it was an admission of a party opponent. (Tr. 342). Detective-Sergeant Grabman went on to testify that he heard Appellant question the CI as to who she was getting the drugs for. (Tr. 342).

**{¶25}** Because counsel objected to this line of questioning, we will review the admission of Detective-Sergeant Grabman's testimony for abuse of discretion. A trial court has broad discretion in determining whether to admit or exclude evidence and its decision will not be reversed absent an abuse of discretion. *State v. Mays*, 108 Ohio App.3d 598, 617, 671 N.E.2d 553 (8th Dist.1996). Abuse of discretion means that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶26}** Detective-Sergeant Grabman did not listen to the events unfold in real time as Detective Reynolds did. Thus, it is questionable whether his testimony, standing alone, would be admissible under the best evidence rule. But what Appellant fails to mention is that Detective Reynolds had already testified regarding Appellant's statements to the CI about the drugs. Detective Reynolds testified before Detective-Sergeant Grabman testified. And as discussed above, because Detective Reynolds was listening to Appellant and the CI in real time, his testimony as to what he heard was admissible.

**{¶27}** Detective Reynolds testified that during his encounter with the CI, Appellant asked the CI who she was purchasing the drugs for. (Tr. 297). The CI responded that they were for a man in Salem. (Tr. 297). Thus, when Detective-Sergeant Grabman

testified that he heard Appellant question the CI as to who she was getting the drugs for, the jury had already heard this evidence. So if there was error, it was harmless.

**{¶28}** Accordingly, Appellant's first assignment of error is without merit and is overruled.

**{¶29}** Appellant's second assignment of error states:

THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT ALLOWED PROSECUTORIAL MISCONDUCT TO OCCUR WHEN THE PROSECUTOR PORTRAYED THE APPELLANT'S ATTORNEY AS A CRIMINAL DURING AN EXAMPLE GIVEN TO JURORS DURING VOIR DIRE.

**{¶30}** During voir dire, in explaining that the State has the burden to prove the elements of the offense beyond a reasonable doubt, the prosecutor used the following example:

MS. RILEY JONES [the prosecutor]: I'm going to give you a little example, okay. We're going to talk about - - sorry, Attorney King [defense counsel] - - I'm going to use him as my example. An individual, Attorney King here, who has been accused of stealing a tie from a local store, okay.

We have three individuals who were at the store.

The first one says, "I saw Attorney King come in, take the tie - - the red tie off the rack, stick it in his pocket, and walk out the store without paying for it."

Second person says, "I saw Attorney King come in. He took a dark-colored tie off the - - the stand, stuck it in his pocket, and walked out without paying for it."

Third person comes in and says that, "I saw Attorney King come into the store, and he took a pink tie from the rack, and stuck it in his pocket, and he walked out, and he didn't pay for it."

What color is the tie?

MALE JUROR: It doesn't matter.

MS. RILEY JONES: And that's my next question. Does it matter, the color of the tie? No. The elements of the offense would not include the color of the tie. They would include taking an item that didn't belong to you and walking out without paying for it, right, and the identity of the Defendant. So you wouldn't need - - you wouldn't hold the State to the burden of proving without a doubt, the color of the tie; right? That color of the tie would not be an element of the offense. So if you're satisfied beyond a reasonable doubt that Attorney King took the tie without paying for it, right, what would your verdict be? Go ahead. Shout it out.

(Tr. 35-37). Defense counsel did not object to being used as an example in this hypothetical.

**{¶31}** Appellant contends the prosecutor committed misconduct by using defense counsel in the hypothetical example during voir dire. He claims the prosecutor was giving a subliminal message to the jury that defense counsel is a criminal and was defending a man (Appellant) who is a criminal. Appellant asserts he suffered prejudice as a result.

**{¶32}** Defense counsel did not object to the prosecutor's questions. Thus, Appellant has waived all but plain error. *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 77.

**{¶33}** The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial. *State v. Fears*, 86 Ohio St.3d 329, 332, 715 N.E.2d 136 (1999). In reviewing a prosecutor's alleged misconduct, a court should look at whether the prosecutor's remarks were improper and whether the prosecutor's remarks affected the appellant's substantial rights. *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "[T]he touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *Hanna*, 95 Ohio St.3d at ¶ 61, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). An appellate court should not deem a trial unfair if, in the context of the entire trial, it appears clear beyond a reasonable

doubt that the jury would have found the defendant guilty even without the improper comments. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 121.

**{¶34}** Here, the prosecutor simply used defense counsel as an example in her hypothetical example to explain to the jury what the elements of an offense include and what they do not include. She explained to the jury that she was using defense counsel as an example. There was no insinuation that defense counsel was actually a criminal or that he had committed a theft offense. Thus, the prosecutor's comments did not amount to prosecutorial misconduct.

**{¶35}** Moreover, Appellant has failed to show a reasonable probability exists that, but for the prosecutor's hypothetical example, the result of his trial would have been different. In other words, Appellant cannot demonstrate plain error as a direct result of the prosecutor's example.

**{¶36}** Accordingly, Appellant's second assignment of error is without merit and is overruled.

**{¶37}** Appellant's third assignment of error states:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND AN ABUSE OF DISCRETION WHEN IT FAILED TO GRANT THE APPELLANT'S MOTION TO DISMISS [RULE 29] FOR HIS CONVICTIONS WERE BASED ON LEGALLY INSUFFICIENT EVIDENCE.

**{¶38}** Appellant claims here that his convictions were not supported by sufficient evidence and, therefore, the trial court erred in failing to grant his Crim.R. 29 motion for acquittal. Appellant contends that as to the aggravated trafficking in drugs, there was no evidence that drugs were exchanged between him and the CI. He claims the drugs found in the trunk of his wife's car could have been placed there for someone's personal use. As to the aggravated possession of drugs conviction, Appellant points out no drugs were found on his person. Instead, the drugs were found in the trunk of his wife's car.

**{¶39}** An appellate court reviews a denial of a motion to acquit under Crim.R. 29 using the same standard that an appellate court uses to review a sufficiency of the evidence claim. *State v. Rhodes*, 7th Dist. Belmont No. 99 BA 62, 2002-Ohio-1572, at ¶ 9; *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995).

**{¶40}** Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). Sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113. When evaluating the sufficiency of the evidence to prove the elements, it must be remembered that circumstantial evidence has the same probative value as direct evidence. *State v. Thorn*, 2018-Ohio-1028, 109 N.E.3d 165, ¶ 34 (7th Dist.), citing *State v. Jenks*, 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492 (1991) (superseded by state constitutional amendment on other grounds).

**{¶41}** A sufficiency of the evidence challenge tests the burden of production while a manifest weight challenge tests the burden of persuasion. *Thompkins* at 390 (Cook, J., concurring). Therefore, when reviewing a sufficiency challenge, the court does not evaluate witness credibility. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 747 N.E.2d 216, ¶ 79. Instead, the court looks at whether the evidence is sufficient if believed. *Id.* at ¶ 82.

**{¶42}** The jury convicted Appellant of possession of drugs in violation of R.C. 2925.11(A), which provides: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Pursuant to R.C. 2925.11(C)(1)(b), "if the amount of the drug involved equals or exceeds the bulk amount but is less than five times the bulk amount, aggravated possession of drugs is a felony of the third degree, and there is a presumption for a prison term for the offense."

**{¶43}** The jury also convicted Appellant of trafficking in drugs in violation of R.C. 2925.03(A)(2), which provides: "No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale

or resale by the offender or another person." But the court found this offense merged with the possession of drugs conviction.

**{¶44}** We must examine the evidence put forth by the State to determine if it was sufficient to sustain the jury's verdict.

**{¶45}** Erin Miller, a forensic scientist at the Ohio Bureau of Criminal Identification and Investigation (BCI), was the State's first witness. Miller tested the substances recovered by the police in this case. She testified that the four baggies submitted as State's Exhibit 12, contained 3.02 grams of methamphetamine. (Tr. 224). Miller testified that State's Exhibit 13 was a plastic prescription bottle containing a crystalline substance that contained 1.06 grams of methamphetamine. (Tr. 225-226). She stated that the total weight of methamphetamine in this case was 4.08 grams. (Tr. 227). Miller stated that the bulk amount for methamphetamine in Ohio is three grams. (Tr. 224).

**{¶46}** Detective Reynolds testified next. He was the detective assigned to this investigation. Detective Reynolds stated that the task force was familiar with Appellant from various tips. (Tr. 249). So when a CI mentioned she could purchase drugs from Appellant, the task force arranged a controlled buy. (Tr. 249). The detective testified that Appellant arranged to meet the CI at the Mount Zion Lutheran Cemetery during the afternoon of August 5, 2021. (Tr. 250-251). The two agreed on a purchase of 3.5 grams of methamphetamine, known as a "ball" of methamphetamine, for $140. (Tr. 297). Detective Reynolds provided the CI with $140 in "buy money" to purchase drugs from Appellant. (Tr. 251-252). Before providing the money, the task force photocopied it to record the serial number of each of the bills. (Tr. 252).

**{¶47}** The CI met Appellant at the designated location. Detective Reynolds testified that while he was listening to the transaction unfold between Appellant and the CI, he heard Appellant ask the CI who she was buying the drugs for. (Tr. 297). Then, during the transaction, the task force heard an issue arise. (Tr. 252). Detective Reynolds stated that the situation was due to activities the CI engaged in with Appellant. (Tr. 253). Consequently, the task force converged on the CI and Appellant as they were standing in the cemetery. (Tr. 253). Two vehicles were located near them. (Tr. 254). One vehicle belonged to the CI. (Tr. 254). The other vehicle had been driven by Appellant. (Tr. 254).

{¶48} Detective Reynolds subsequently searched the CI's person and vehicle. (Tr. 258). He did not find any drugs. (Tr. 258). He testified that a search of the area turned up a glass narcotics pipe and a torch lighter hidden behind a tree near where Appellant and the CI had met, which is where the CI indicated they might be found. (Tr. 264).

{¶49} On cross-examination, the detective stated that he and other members of the task force had been listening to the meeting between the CI and Appellant as it was happening. (Tr. 285). He heard the CI performing a sex act on Appellant despite being told by the task force not to engage in sexual activity with Appellant. (Tr. 285, 295).

{¶50} Detective-Sergeant Grabman was the State's final witness. He is the director of the Columbiana County Drug Task Force. As the director, he approved Detective Reynolds' request for "buy money" to set up the controlled drug purchase between the CI and Appellant. (Tr. 307-308). Detective-Sergeant Grabman was also a surveillance officer during the controlled buy. (Tr. 310). He surveilled the area between Appellant's residence and the cemetery. (Tr. 314).

{¶51} The detective-sergeant testified that his officers made him aware that a concern arose during the controlled buy. (Tr. 316). Consequently, he directed the officers to stop the controlled buy immediately. (Tr. 316). He then joined his officers in responding to the cemetery. (Tr. 316-317). Upon arrival, he noticed two vehicles near the CI and Appellant. (Tr. 317). One of the vehicles belonged to the CI. (Tr. 317). The other vehicle, a blue Saturn, was registered to Appellant's wife. (Tr. 318). Detective-Sergeant Grabman stated that he had seen Appellant drive past him in that vehicle just prior to when the CI reached the cemetery. (Tr. 318).

{¶52} So as to protect the CI, Detective-Sergeant Grabman testified that the officers told Appellant and the CI that they were responding to a call of suspicious activity. (Tr. 320). The detective-sergeant then asked Appellant why the blue Saturn was at the cemetery. (Tr. 320). Appellant responded that it was his wife's car but he did not know why it was there. (Tr. 320). The detective-sergeant knew this to be untrue because he had just witnessed Appellant driving the Saturn. (Tr. 320). Appellant became verbally combative with the officers. (Tr. 321). Detective-Sergeant Grabman asked Appellant if he drove the Saturn to the cemetery. (Tr. 321). Appellant stated that he did not. (Tr.

321). At this point, the detective-sergeant decided to arrest Appellant for obstructing official business due to his lies about how his wife's car got to the cemetery. (Tr. 323). Appellant responded that had he told the truth about driving his wife's car, the detective-sergeant would have arrested him for driving under a suspended license. (Tr. 323). Upon further investigation, Detective-Sergeant Grabman learned that Appellant, in fact, did not have a valid driver's license. (Tr. 323).

{¶53} Appellant was subsequently searched and the task force's money was found in his pocket. (Tr. 324, 334). The officers then discussed having the Saturn towed from the cemetery. (Tr. 324). They then undertook a search of the vehicle. (Tr. 324-325). They found a black bag in the trunk. (Tr. 325). Inside the bag, the officers located: four baggies of methamphetamine; a prescription bottle with Appellant's name on it, which contained more methamphetamine; Appellant's wallet with his ID in it; and $332 in cash. (Tr. 325, 335-337; State's Exs. 12, 13). The individual baggies were labeled with either ".5" or "G," which Detective-Sergeant Grabman testified stood for one-half of a gram and gram, respectively. (Tr. 337). He indicated this labeling was consistent with the drugs being packaged for sale as opposed to the drugs being for personal use. (Tr. 338-339).

{¶54} In viewing this evidence in the light most favorable to the prosecution as we are required to do, the evidence was sufficient to sustain Appellant's conviction. The testimony demonstrated that the CI arranged a meeting with Appellant at the cemetery to purchase methamphetamine. The two agreed on a purchase of 3.5 grams of methamphetamine, known as a "ball" of methamphetamine, for $140. Despite being instructed not to engage in sexual activity with Appellant, the CI apparently did so. When the officers who were listening to the events unfold heard this, they converged on the cemetery. Upon searching Appellant, the officers found the $140 that they provided to the CI in Appellant's pocket. The CI did not have any drugs on her person. However, the officers located a bag in the trunk of the car that Appellant had driven to the cemetery. Inside the bag, the officers found small baggies containing methamphetamine, a prescription bottle with Appellant's name on it containing more methamphetamine, Appellant's identification card, and over $300 in cash. Testing revealed the baggies contained a total of 4.08 grams of methamphetamine. The bulk amount for methamphetamine in Ohio is three grams.

{¶55} In the context of drug offenses, "possession" may be either actual possession or constructive possession. *State v. Carter*, 7th Dist. Jefferson No. 97-JE-24, 2000 WL 748140, *4 (May 30, 2000). "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976).

{¶56} A defendant's conviction for drug possession can be based upon circumstantial evidence of possession. *State v. DeSarro*, 7th Dist. Columbiana No. 13 CO 39, 2015-Ohio-5470, ¶ 41. When drugs are readily usable and found in very close proximity to a defendant, these facts may constitute circumstantial evidence and support a conclusion that the defendant had constructive possession of the drugs. *State v. Barker*, 7th Dist. Jefferson No. 05-JE-21, 2006-Ohio-1472, ¶ 78, quoting *State v. Kobi*, 122 Ohio App.3d 160, 174, 701 N.E.2d 420 (1997).

{¶57} In this case, the evidence was sufficient to prove that Appellant had constructive possession of the drugs in the trunk of his wife's car. Appellant drove the car to the pre-arranged controlled drug buy. The drugs were in the trunk of the car in a bag with Appellant's ID and a prescription bottle with his name on it. He accepted the $140 from the CI, which was the predetermined payment for a "ball" of methamphetamine. Appellant and the CI were then interrupted by the task force due to their sexual encounter. This evidence shows that the drugs were readily usable and found in close proximity to Appellant, thus demonstrating constructive possession.

{¶58} Accordingly, Appellant's third assignment of error is without merit and is overruled.

{¶59} Appellant's fourth assignment of error states:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION WHEN IT FAILED TO VACATE THE APPELLANT'S CONVICTIONS FOR THE SAME WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶60} In his final assignment of error, Appellant argues his convictions were against the manifest weight of the evidence.

{¶61} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* (Emphasis sic.). In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

{¶62} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶63} In addition to the testimony set out above, we must also consider the evidence put forth by the defense.

{¶64} Appellant testified in his own defense. According to Appellant, he went to the cemetery on the day in question to meet a woman with whom he was having an affair. (Tr. 378). He stated that the woman called him and wanted to come to his house but he did not know when his wife would be home so they met at the cemetery. (Tr. 379). He stated the woman owed him money and they were also going to have sex. (Tr. 380). Appellant stated that when the task force appeared, he did not tell them why he was there. (Tr. 381).

{¶65} Appellant acknowledged that the woman gave him money, which he placed in his pocket. (Tr. 386). But he denied the money was for a drug purchase, stating instead that she owed him money. (Tr. 386). He admitted that he asked the woman if she wanted to "hit the pipe." (Tr. 387). But he claimed he did not recognize the lighter and pipe that were found under a tree near where he had been standing. (Tr. 387). Instead, he stated that he was referring to something sexual with the phrase, "hit the pipe." (Tr. 387).

{¶66} When asked if he drove his wife's Saturn to the cemetery that day, Appellant denied it. (Tr. 392). Yet he admitted that his wife's Saturn and the other woman's car were the only two vehicles there. (Tr. 392). He also admitted that his wallet and his

prescription bottle were in the trunk of his wife's car. (Tr. 393). But he denied that the drugs were his. (Tr. 393-394).

**{¶67}** The manifest weight of the evidence supports the jury's verdict.

**{¶68}** The State put forth evidence that the CI arranged to meet Appellant at the cemetery to purchase methamphetamine from him. The two arrived at the meeting point. The CI gave Appellant the pre-marked drug-buy money provided to her by the task force. The two then engaged in sexual activity. They were interrupted by the task force who then found over four grams of methamphetamine in the trunk of Appellant's wife's car with Appellant's ID and a prescription bottle with his name on it.

**{¶69}** Although the appellate court acts as the proverbial "thirteenth" juror under the manifest weight of the evidence standard, it rarely substitutes its own judgment for that of the jury's. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. This is because the trier of fact is in the best position to determine the credibility of the witnesses and the weight to be given to the evidence. *Id.*

**{¶70}** Here, Appellant denied driving his wife's car to the cemetery to meet the CI, denied having pre-arranged a drug sale, and denied that the methamphetamine found with his ID and his prescription bottle was his. But the jury was able to listen to Appellant's testimony and consider it in addition to the testimony of the State's witnesses. After listening to Appellant's testimony, the jury clearly did not find him credible. We will not second-guess the jury's credibility determination.

**{¶71}** Accordingly, Appellant's fourth assignment of error is without merit and is overruled.

**{¶72}** Finally, we are compelled to sua sponte raise another issue not raised by Appellant. The trial court merged the trafficking in drugs with the possession of drugs. Even though the trial court merged these offenses, it still entered sentences on both offenses, mistakenly believing that merger was satisfied by running the sentences on the merged offenses concurrently.

**{¶73}** When a court merges two offenses, however, it cannot sentence the defendant on both offenses and order the sentences to run concurrently. *State v. Tapscott*, 2012-Ohio-4213, 978 N.E.2d 210, ¶ 48 (7th Dist.). Instead, it must refrain from entering a sentence on one of the merged offenses. *Id.* As this court has recognized:

Case No. 23 CO 0020

"Sentencing concurrently on merged counts does not satisfy the merger doctrine as no sentence at all should be entered on one of the two merged counts." *State v. Gardner*, 7th Dist. No. 10 MA 52, 2011-Ohio-2644, 2011 WL 2175814, ¶ 24, citing *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, at ¶ 17.

Failure to merge allied offenses of similar import constitutes plain error even where a defendant's sentences are run concurrently because "a defendant is prejudiced by having more convictions than are authorized by law." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31 (plain error even where it is a jointly recommended sentence), citing *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, 817 N.E.2d 845, ¶ 96-102.

*Id.* at ¶ 48-49.

**{¶74}** In this case, the State recommended sentences on both counts and stated that they would "have to run concurrently." (Tr. 476). The State did not elect on which offense it wished the trial court to enter a conviction and sentence. And the trial court did not correct the State. Instead, while the court found that merger applied, it nonetheless sentenced Appellant to 16 months in prison for trafficking and 30 months for possession to run concurrently. (Tr. 486-487). The court reiterated these two sentences in its judgment entry.

**{¶75}** "Cases such as this are remanded for a limited resentencing hearing so that the prosecution can select which of the merged offenses it wishes the court to enter a conviction and sentence the defendant on." *Id.* at ¶ 50, citing *State v. Whitfield*, 124 Ohio St.3d 319, 922 N.E.2d 182, at ¶ 21-22 (finding appellate court impermissibly intruded on state's right to elect by ordering which offense to vacate); *Maumee v. Geiger*, 45 Ohio St.2d 238, 244, 344 N.E.2d 133 (1976).

{¶76} For the reasons stated above, Appellant's convictions are affirmed. Appellant's sentence is reversed. This matter is remanded for a resentencing hearing where the State shall select whether it wishes the defendant to be sentenced on the trafficking count or the possession count.

Waite, J., concurs.

Robb, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed as to Appellant's convictions. The judgment is reversed as to Appellant's sentence and the matter is remanded for resentencing according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**