[Cite as *State v. Richardson*, 2025-Ohio-3128.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

MICHAEL RICHARDSON,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 BE 0006

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 23 CR 186

**BEFORE:**
Katelyn Dickey, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan,* Belmont County Prosecutor, and *Atty. Jacob A. Manning*, Assistant Prosecuting Attorney, for Plaintiff-Appellee

*Atty. Martin E. Yavorcik*, for Defendant-Appellant.

Dated: September 3, 2025

**DICKEY, J.**

{¶1}   Appellant, Michael Richardson, appeals his conviction for one count of aggravated possession of drugs (methamphetamine in an amount equal to or exceeding five times but less than fifty times the bulk amount) in violation of R.C. 2925.11(A)(C)(1), a felony of the second degree, following a jury trial in the Belmont County Court of Common Pleas.  Appellant was acquitted of one count of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2)(C)(1), a felony of the second degree. The trial court imposed an indefinite sentence of six to nine years.

{¶2}   Appellant advances six assignments of error.  First, he contends there is insufficient evidence in the record to sustain his conviction and his conviction is against the manifest weight of the evidence.  Second, he argues his appearance in jail attire and restraints on the first day of his two-day trial violated his right to the presumption of innocence.  Third, Appellant asserts the trial court abused its discretion in overruling Appellant's motion for the appointment of new trial counsel on the first day of trial.  Fourth, Appellant contends the state improperly shifted its burden of proof by asserting during closing argument that Appellant had offered no evidence in support of his theory of the case.  Fifth, Appellant argues the trial court's decision overruling the motion to suppress cannot be reconciled with his conviction for aggravated possession of drugs. Finally, Appellant asserts cumulative error deprived him of his right to a fair trial.  For the following reasons, Appellant's conviction is affirmed.

## FACTS AND PROCEDURAL HISTORY

{¶3}   Two witnesses testified at trial:  Terry Fitch, the general manager of the Red Roof Inn ("hotel") in St. Clairsville, Belmont County, Ohio; and Jason Schwarck, a detective with the criminal investigation unit of the Belmont County Sheriff's Department. Detective Schwarck was dispatched to the hotel on December 23, 2022 in response to Fitch's request for assistance with suspected drugs found in a vacated hotel room.

{¶4}   Fitch testified Appellant and his wife were lodged in room 216 of the hotel from November 29, 2022 to December 22, 2022.  Fitch authenticated a registration slip that established Appellant rented room 216 from November 29, 2022 through December 2, 2022. Additional registration slips indicated Appellant made another reservation

through December 6, 2022 then another through December 9, 2002. Appellant's occupancy was ultimately ended on December 22, 2022, when no new reservation was made.

{¶5} Fitch testified that departure time at the hotel is 11:00 a.m. Around that time each day, Fitch acquires a list of rooms with expected departures. As guests often depart without checking out at the front desk, Fitch performs a cursory check of each room to ascertain whether the guest has vacated the premises. It is common for Fitch to find personal property in rooms that are supposed to be vacant, leaving Fitch to wonder whether the guest intends to extend his stay.

{¶6} Fitch explained he employs a "lock-out" key after check-out time, which prevents the guest from accessing the room until he or she pays to rent the room at the front desk or through a third-party booking site. Reservations cannot be extended, that is, a new reservation must be made regardless of whether the previous reservation has expired.

{¶7} Fitch further explained he does not empty a locked-out room of its contents immediately, particularly if the room is rented by a long-term guest. Instead, he allows a twenty-four-hour grace period should the guest merely be tardy in acquiring a new reservation or the reservation has been processed through a third-party booking site, which is sometimes delayed. Nonetheless, the room is released to the hotel at 11:00 a.m. when the lock-out key is employed. (Trial Tr., Vol. I, at p. 199.)

{¶8} Such was the case on December 22, 2022, when Fitch accessed room 216. Fitch noted the presence of a considerable amount of personal property, but left the room undisturbed based on his practice of allowing a tardy guest to continue his occupancy by renting the room the same day that his previous reservation expires.

{¶9} The state offered into evidence a registration slip for room 216 with an end date of December 14, 2022, with a handwritten notation — "December 16, 2022," and a second handwritten notation in red — "December 23, 2022." Fitch explained the handwritten notation did not show the reservation had been extended, as reservations may not be extended. Instead, the handwritten notation was the method by which management notified front desk clerks that they should not rent the room to a new guest. In other words, the handwritten notation was the manner in which the hotel staff was given

notice that a room contained the personal property of the previous guest with no current reservation and should not be rented.

{¶10} Appellant was arrested on the evening of December 22, 2022 following a verbal altercation with Opal Coe, the night desk manager at the hotel. Appellant's wife was arrested that same evening on an outstanding warrant. Appellant was released that evening, but his wife was detained. Fitch explained any guest who is arrested on the premises is prohibited from continuing his or her occupancy at the hotel.

{¶11} Neither the December 22, 2022 police report nor the details of the arrest were offered into evidence at trial. However, at the conclusion of the state's case-in-chief, second appointed counsel explained he did not intend to call any witnesses to testify on Appellant's behalf. Second appointed counsel proffered Appellant's desire to call two witnesses, including Coe. Appellant accused Coe of stealing his cat on Fitch's orders. Appellant interjected the cat was returned six months later by "the person [Coe] gave it to." (*Id.* at p. 243.) The trial court asked second appointed counsel if Appellant was aware that calling Coe as a witness would subject her to cross-examination by the state, at which time she could be questioned about Appellant's "threat to kill and that sort of thing." (*Id.* at p. 245.)

{¶12} According to the body camera footage of "Officer Kulpa" from the morning of December 23, 2022, the morning after Appellant's arrest, Appellant returned to the hotel parking lot where he called the front desk. The desk clerk in turn called the police. On the body camera footage, the desk clerk informs Officer Kulpa that she refused to talk with Appellant when he called that morning due to his verbal altercation with Coe the previous evening. The desk clerk further states the arresting officer from the previous evening, who drove Appellant back to the hotel after his release from jail, entered room 216 with Appellant's consent to retrieve a few items of personal property.

{¶13} On the body camera footage, Appellant states the arresting officer from the previous evening drove Appellant back to the hotel but told him not to return to the hotel until the following morning at 8:00 a.m. Appellant explains he returned to retrieve his pets and expresses particular concern for his wife's bird. Appellant was arrested for trespassing. On the body camera footage, law enforcement instructs Appellant that if he is released on bond he may not return to the hotel.

**{¶14}**  Because Appellant's occupancy ended on December 22, 2022 and no new reservation was booked that day, Fitch and the hotel maintenance man entered room 216 on December 23, 2022 at noon to collect Appellant's personal property and store it in his truck.  They found a disordered room with tote bags and food strewn on the floor.  There was a projector positioned to display a pornographic movie on the ceiling.  Fitch also discovered a goldfish and two birds, one in a birdcage, the other in a cat carrier.  Fitch and the maintenance man spent several hours packing Appellant's personal property in the tote bags found on the floor of the room. Fitch called Animal Control to collect the pets.

**{¶15}**  Fitch testified he discarded a pizza box on a table and found beneath it a plate with a shortened red straw and white powder, which appeared to be drugs. (*Id.* at p. 202.) Fitch further testified he finds suspected drugs in locked-out rooms a few times a year.  As a matter of course, Fitch calls law enforcement to collect the drugs.  Fitch testified only Appellant and his wife had access to room 216. (Trial Tr., Vol. II, at p. 36-37).  On cross-examination, Fitch conceded room 216 did not have daily or nightly visitors consistent with the sale of drugs from the room.

**{¶16}**  When Detective Schwarck arrived at 2:30 p.m. on December 23, 2022, Fitch gave Detective Schwarck permission to conduct a warrantless search of the room.  Detective Schwarck suspected the white powder on the plate was either cocaine or methamphetamine. His search of room 216 yielded drug paraphernalia including a bong and a jar containing suspected methamphetamine near the other drugs on a table. (*Id.* at p. 67-69).  Detective Schwarck also found vials containing additional drugs alongside the bed, some of which were in a wallet-style pouch that contained an airline ticket bearing the name of Appellant's wife. (*Id.* at p. 92-93).

**{¶17}**  There are no photographs of the drugs and drug paraphernalia in the location where they were initially discovered.  Detective Schwarck testified he relies on his body camera footage to capture the contraband where it is found. Detective Schwarck's body camera footage was excluded due to the state's failure to timely provide a copy to the defense. However, there is a photograph of all of the contraband, which was collected and placed on a desk in the hotel room by Detective Schwarck.

{¶18} Fitch testified a $200 smoking fee was charged to Appellant's credit card on December 23, 2022, after Fitch discovered ashes in room 216. The detailed bill from the hotel clearly identifies room 216 as "non-smoking." The $200 charge posted on Appellant's credit card on December 24, 2022. (Trial Tr., Vol. I, at p. 197-198.)

{¶19} On cross-examination, second appointed counsel asked Fitch to acknowledge the catch-22 Appellant faced as a result of his multiple arrests. Second appointed counsel posited Appellant was prohibited by hotel rule from continuing his occupancy, thereby stripping him of his reasonable expectation of privacy, and unable to retrieve his personal property from room 216 due to his second arrest. Fitch responded he was not present when Appellant returned to the hotel on the morning of December 23, 2022. As a consequence, Fitch testified he played no role in Appellant's second arrest and did not provide any information regarding Appellant's access to his personal property.

{¶20} Later analysis showed all of the substances found in room 216 were methamphetamine. (Trial Tr., Vol. II, at p. 79-81). Appellant and his wife were arrested and charged based on the quantity of methamphetamine found during the search of the hotel room.

{¶21} On July 7, 2023, Appellant was charged in a two-count indictment, in which he was charged with aggravated possession and trafficking methamphetamine. Appellant was arrested and appeared for an arraignment on October 30, 2023, at which time he pled not guilty and bond was set. Bond was later reduced and Appellant was released on bond.

{¶22} Appellant filed three motions to continue, after which a plea agreement deadline hearing was set for July 8, 2024. When Appellant failed to appear at the hearing, his bond was revoked and a warrant was issued for his arrest.

{¶23} Following his arrest, Appellant was held in custody without bond. On September 5, 2024, Appellant's first appointed counsel moved to withdraw based on a breakdown in communication between himself and Appellant. The trial court denied the motion, finding in part that Appellant filed the motion to delay the trial.

{¶24} On September 9, 2024, through his first appointed counsel, Appellant filed a motion to suppress the evidence collected during the search of room 216. The trial court held a hearing on the motion to suppress on September 19, 2024. Fitch testified at the

hearing and Appellant offered limited testimony. Detective Schwarck did not testify but offered several facts, via proffer. The parties stipulated to the facts offered by Detective Schwarck, which includes his statement that the contraband was discovered in plain sight. On September 23, 2024, the state filed a response to the motion to suppress and Appellant supplemented the motion on October 3, 2024.

{¶25} In his motion to suppress and his reply brief, which was filed by his first appointed counsel after the hearing on the motion to suppress, Appellant argued a $230 POS pre-authorization dated December 23, 2022, which appears on his credit card statement under the caption "holds and releases," establishes that a new reservation for room 216 was made through a third-party booking site, thereby extending his legitimate expectation of privacy. However, the preauthorization reads in relevant part, "(Req=-200.00 Adj=-230.00)." Pre-authorized amounts on Appellant's credit card are consistently greater than the actual amount requested, which ultimately posts to the credit card. Consequently, it appears the pre-authorization represents the smoking charge, which posted on December 24, 2022, with an adjustment of $30, which was removed when the requested amount of $200 posted to the credit card on December 24, 2022. Further, the pre-authorization is dated 4:47 p.m., roughly two hours after Fitch consented to the search of room 216.

{¶26} Appellant did not advance a specific challenge to the drugs found in the pouch in his motion to suppress or in his reply brief. Further, Appellant stipulated to the fact that the contraband was found in plain sight. The only basis for suppression that Appellant asserted before the trial court was his alleged overall, general expectation of privacy in the hotel room due to his alleged rental payment of $230, which never posted to his account.

{¶27} On October 16, 2024, the trial court overruled the motion to suppress finding Appellant had no expectation of privacy in room 216 due to the expiration of his rental period on December 22, 2022. The trial court opined:

> [Fitch's] testimony and the stipulated Exhibits establish that at the time of the search, [Appellant's] rental period had expired by more than twenty-seven (27) hours. Any rental payment made or received after the

search cannot change that fact. Thus, at the time of the search, neither [Appellant] nor his wife retained any expectation of privacy in Room 216.

(10/16/24 J.E., p. 2.)

{¶28} On October 21, 2024, Appellant's first appointed counsel again moved to withdraw as counsel and to continue the trial. The trial court sustained the motion and Appellant's second appointed counsel entered his appearance on October 30, 2024. Second appointed counsel was the subject of the oral motion at issue in the third assignment of error. It is important to note, second appointed counsel did not file or argue the motion to suppress.

{¶29} Appellant's second appointed counsel filed a suggestion of incompetence on October 31, 2024. After the suggestion of incompetence was filed, but prior to a hearing on December 23, 2024 to consider the results of the evaluation, Appellant filed a number of pro se handwritten motions and pleadings. On November 19, 2024, the trial court declined to consider the pro se pleadings as Appellant was represented by second appointed counsel. A number of additional pro se filings were submitted following the November 19, 2024 entry.

{¶30} On December 23, 2024, the trial court considered the results of the evaluation and found Appellant was competent to stand trial. The evaluation is not in the record.

{¶31} The jury trial commenced on January 7, 2025. Appellant stipulated to the weight of the charged substance, 17.6 grams, but did not stipulate that the substance was methamphetamine.

{¶32} Prior to voir dire, the trial court acknowledged Appellant "is dressed in his orange-colored jail outfit." The trial court represented, "[w]e did provide him with the opportunity to appear in clothing that he provided; also, to appear without restraints." (Trial Tr., Vol. I, at p. 3.) The trial court's representation is supported by two pre-trial judgment entries, in which the trial court memorialized Appellant's opportunity to wear civilian clothes and appear without restraints at the trial, "but only in accordance with the Sheriff's normal policies and procedures." (9/6/24 J.E. and 12/30/24 J.E.)

{¶33} During a colloquy with Appellant, the trial court acknowledged Appellant had expressed on the previous Friday that he would not attend the trial scheduled for the following Tuesday. The trial court attempted to conduct a video conference with Appellant to address the matter before the trial date, but Appellant refused to participate in the video conference as well. When the trial court asked Appellant if he wanted to waive his right to attend the trial, Appellant responded, "I'm not waiving any rights and I'm not prepared for trial because I do not have counsel provided." (*Id.* at p. 7.)

{¶34} Next, Appellant sought the removal of second appointed counsel. Appellant filed numerous pro se pleadings prior to the trial, which were not considered by the trial court because Appellant was represented by second appointed counsel. Appellant alleged second appointed counsel did not discuss the case with him or file any motions. Second appointed counsel responded, "I am not having this discussion in open court." (*Id.* at p. 8.)

{¶35} Appellant represented that second appointed counsel had not hired an expert witness or investigator, and no subpoenas had been served on Appellant's behalf. Second appointed counsel responded that four or five subpoenas had been served.

{¶36} The trial court asked Appellant if there were any other reasons that second appointed counsel should be removed. Appellant responded:

> Other than the fact he's unaware of any of the elements of the case; he has not subpoenaed anybody; he has not put forth any pretrial motion hearings. I have not – he's looking at video that I have not see any [sic]. I put in a subpoena for request of umpteen videos in regards to this. I mean, just -- why don't you pull out the list. There's about 18 of them -- 18 . . . [T]hey were rubberstamped because you were said to be counsel. Is that correct, Your Honor? You rubber stamped my subpoenas because they were supposed to be submitted by provided counsel, correct?

(*Id.* at p. 11-12.)

{¶37} The trial court responded, "[y]ou have counsel, right." The trial court added, "everything is in the record now for later review by the Court of Appeals if that's the way

this goes." (*Id.* at p. 12.) The trial court overruled Appellant's oral motion to appoint new counsel.

**{¶38}** Appellant responded that he was "refusing to stand trial." (*Id.* at p. 13.) The trial court informed Appellant the trial was going to proceed. The trial court asked Appellant if he wanted to waive his right to counsel and represent himself, but Appellant again refused to waive any rights. (*Id.* at p. 13-14.)

**{¶39}** At that point, second appointed counsel made an oral motion to withdraw. Second appointed counsel stated:

> I find it hard for me to proceed with this. I don't know how to – I mean,
> I have reviewed the discovery in this case. I'm prepared to proceed to trial
> today, but I do have genuine concerns about the fact that the state of our
> relationship as attorney and client.

(*Id.* at p. 14-15.) The trial court overruled second appointed counsel's oral motion to withdraw.

**{¶40}** The trial court informed Appellant that he could remain in the courtroom, but would be removed if he became disruptive. The trial court added, "[t]hat will have to have occurred in the presence of the jury. You really don't want them to see that kind of conduct. All right?" (*Id.* at p. 16.) Appellant asked to view the witness list and the trial court provided a copy to Appellant.

**{¶41}** Before commencing voir dire, the trial court cautioned the prospective jurors:

> [Appellant] is appearing today. Obviously, you've now seen him. You will
> see that he's being restrained and that he's wearing a jail uniform. He was
> given the opportunity to appear without restraints and in civilian clothing and
> he declined those opportunities. You are not to consider those factors for
> any reason whatsoever. When you decide a case like this, you decide the
> case on the evidence that you will see and hear during the trial, not on any
> of these extraneous matters. All right. So keep that in mind.

(*Id.* at p. 26.)

Case No. 25 BE 0006

**{¶42}** At the conclusion of the first day of trial, the trial court asked Appellant if he intended to wear prison attire or civilian clothes the following day. He did not respond. The trial court instructed the deputies to permit Appellant to wear civilian clothes, but to "use [their] own judgment based on [their] policies and procedures as far as [Appellant's] restraints." (Trial Tr., Vol. II, at p. 121.)

**{¶43}** Appellant appeared unrestrained and in civilian clothing on the second day of trial. Appellant filed a pro se pleading that morning, which he characterized at trial as "the only new submission with regards to me being physically forced to trial yesterday by a number of officers. Dragged in, in orange clothing and shackles for trial." (Trial Tr. Vol. I, at p. 234.)

**{¶44}** On January 8, 2025, the jury returned a verdict finding Appellant not guilty of aggravated trafficking, but guilty of aggravated possession of drugs. A pre-sentence investigation report was prepared. On January 13, 2025, the trial court imposed an indefinite prison sentence of six to nine years. Appellant was given pre-trial credit for 223 days.

**{¶45}** This timely appeal followed.

## ANALYSIS

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED IN ALLOWING A CONVICTION FOR AGGRAVATED POSSESSION OF DRUGS ORC §2925.11(A)(C)(1) WHERE IT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**{¶46}** Whether the evidence is legally sufficient to sustain a conviction is a question of law evaluating the adequacy of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 386, (1997). An evaluation of witness credibility is not involved in a sufficiency review, as the question is whether the evidence, if believed, is sufficient to support the contested elements. *State v. Yarbrough*, 2002-Ohio-2126, ¶ 79, 82. *See also State v. Murphy*, 91 Ohio St.3d 516, 543 (2001). In other words, sufficiency involves the state's

burden of production rather than its burden of persuasion. *See Thompkins* at 390 (Cook, J., concurring).

{¶47} In viewing a sufficiency of the evidence argument, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution. *See State v. Filiaggi*, 86 Ohio St.3d 230, 247 (1999); *State v. Goff*, 82 Ohio St.3d 123, 138 (1998). A conviction cannot be reversed on grounds of sufficiency unless the reviewing court determines that no rational juror could have found the elements of the offense proven beyond a reasonable doubt. *Id.* The question is merely whether any rational mind could find the elements were established by the direct and circumstantial evidence. *See State v. Getsy*, 84 Ohio St.3d 180, 193 (1998).

{¶48} If a conviction is not supported by sufficient evidence, the defendant cannot be retried due to the attachment of jeopardy. *Thompkins* at 387 (unlike a case reversed on weight of the evidence, which can be retried), citing *Tibbs v. Florida*, 457 U.S. 31, 41, 47 (1982). All evidence, including evidence the reviewing court finds was admitted in error, can be considered in determining whether the evidence was sufficient to sustain a guilty verdict. *State v. Brewer*, 2009-Ohio-593, ¶ 16-20, citing *Lockhart v. Nelson*, 488 U.S. 33, 35, 38, 40-42 (1988).

{¶49} The jury convicted Appellant of aggravated possession of drugs in violation of R.C. 2925.11(A), which provides: "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Pursuant to R.C. 2925.01(K), to "possess" means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

{¶50} R.C. 2901.22, captioned "Culpable mental states," defines "knowingly" as follows: "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."

{¶51} Possession can be individual or joint. *State v. Wolery*, 46 Ohio St.2d 316, 332 (1976). In the context of drug offenses, "possession" may be either actual possession or constructive possession. *State v. Smith*, 2023-Ohio-4504, ¶ 55 (7th Dist.). "Constructive possession exists when an individual exercises dominion and control over

Case No. 25 BE 0006

an object, even though that object may not be within his immediate physical possession." *Wolery* at 329. "It must also be shown that the person was conscious of the presence of the object." *State v. Hankerson*, 70 Ohio St.2d 87, 91 (1982).

**{¶52}** A conviction for drug possession can be based on circumstantial evidence of possession. *State v. DeSarro*, 2015-Ohio-5470, ¶ 41 (7th Dist.). "Circumstantial evidence and direct evidence inherently possess the same probative value." *State v. Prieto*, 2016-Ohio-8480, ¶ 34 (7th Dist.), citing *In re Washington*, 81 Ohio St.3d 337, 340 (1998); *State v. Jenks*, 61 Ohio St.3d 259, 272-273 (1991), paragraph one of the syllabus. In fact, "[e]vidence supporting the verdict may be found solely through circumstantial evidence." *State v. Smith*, 2008-Ohio-1670, ¶ 49 (7th Dist.).

**{¶53}** Appellant argues he shared room 216 with his wife and some of the drugs were found in a pouch with her personal property, so there is insufficient evidence that he possessed the drugs. To the contrary, viewing the evidence in a light most favorable to the state, a reasonable fact finder could conclude Appellant and his wife jointly possessed the drugs. The couple both resided in room 216 for roughly one month. The methamphetamine on the plate was prepared for use. Appellant's argument that some of the drugs were found in the pouch with an airline ticket in his wife's name may well have resulted in his acquittal on the trafficking charge, however, it does not apply with equal force to the possession charge. The evidence establishes all of the drugs were within Appellant's dominion and control, as they were in a hotel room in which he resided for roughly one month. Further, the drugs on the plate demonstrate Appellant's consciousness of their presence. Accordingly, we find there is sufficient evidence in the record to sustain Appellant's conviction for drug possession.

**{¶54}** Weight of the evidence concerns the effect of the evidence in inducing belief, and our corresponding review evaluates "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Thompkins*, 78 Ohio St.3d at 387. In analyzing a manifest weight challenge, we consider whether the state met its burden of persuasion. *Id.* at 390 (Cook, J., concurring) (as opposed to the state's burden of production involved in a sufficiency review). We review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the

trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Lang*, 2011-Ohio-4215, ¶ 220, citing *Thompkins* at 387.

**{¶55}** However, " 'the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.' " *State v. Hunter*, 2011-Ohio-6524, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. It is the trier of fact who occupies the best position from which to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). We therefore generally proceed under the premise that "when there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, we do not choose which one we believe is more credible." *State v. Carter*, 2017-Ohio-7501, ¶ 105 (7th Dist.), citing *State v. Gore*, 131 Ohio App.3d 197, 201 (7th Dist. 1999).

**{¶56}** Furthermore, where a case was tried by a jury, only a unanimous appellate court can reverse on manifest weight of the evidence grounds. Ohio Const., art. IV, § 3(B)(3). The power of the court of appeals to sit as the "thirteenth juror" is limited in order to preserve the jury's primary function of weighing the evidence. *Thompkins* at 389.

**{¶57}** Appellant argues the jury verdict is the product of "stacking inference upon inference, and [the jury] failed to exclude reasonable hypotheses of innocence." (Appellant's Brief., p. 15.) Appellant offers two hypotheses of innocence: (1) his wife was the exclusive owner of the drugs; and (2) Fitch planted the drugs on December 23, 2022, based on the evidence that the arresting officer entered Appellant's room with his consent on December 22, 2022 and did not see the bong or the drugs.

**{¶58}** With regard to Appellant's argument predicated upon his wife's sole ownership of the drugs, the jury could have relied on the presence of drugs and drug paraphernalia in room 216, regardless of the fact that some of the drugs were found in the pouch. With regard to Appellant's argument that the drugs were planted by Fitch, the jury was in the best position to weigh Fitch's credibility. Considering the facts in the record, that is, Appellant and his wife resided in room 216 for roughly a month, the drugs on the plate were on the table ready for use, and the remaining drugs were either in plain

view or within a container to which Appellant had access, we find Appellant's conviction is supported by the manifest weight of the evidence.

{¶59} In summary, we find there is sufficient evidence in the record supporting Appellant's conviction and the jury did not lose its way when it convicted Appellant on the aggravated possession of drugs charge. Accordingly, we find Appellant's first assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 2

**THE PRESUMPTION OF INNOCENCE WAS VIOLATED BY APPELLANT'S APPEARANCE IN JAIL ATTIRE AND SHACKLES DURING JURY SELECTION.**

{¶60} "A defendant may be prejudiced by appearing at trial in jail clothes." *State v. Duncan*, 2017-Ohio-9378, ¶ 9 (7th Dist.), citing *State v. Collins*, 2007-Ohio-3578, ¶ 27 (6th Dist.); *Estelle v. Williams*, 425 U.S. 501, 507 (1976). "The United States Supreme Court held that a defendant's right to due process is violated when he is *compelled* to stand trial before a jury while wearing identifiable prison clothing." (Emphasis added) *Duncan* at ¶ 9, citing *Estelle* at 512. In other words, the defendant's choice of clothing may be strategic, and as a result, while some defendants may want to appear in civilian clothing, some may not. *Estelle* at 504-05. "Taking into consideration these apparently opposing principles, the relevant inquiry becomes not merely whether the defendant appeared before the jury in prison attire, but whether he was compelled to appear in prison garb." *Duncan* at ¶ 9, citing *Estelle* at 507.

{¶61} Further, " 'the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation.' " *Duncan* at ¶ 10, quoting *Estelle* at 512-513. Neither second appointed counsel nor Appellant contemporaneously objected to Appellant's appearance on the first day of trial, although Appellant filed a pro se motion on the second day of trial alleging he was "forced by 10 or more officers with eletric [sic] gloves into shackles into an SUV and brought to court." (1/8/25 pro se pleading, p. 1.)

Case No. 25 BE 0006

**{¶62}** Finally, we have recognized that a curative instruction negates any potential prejudice. *State v. Rivers*, 2024-Ohio-4868, ¶ 43 (7th Dist.); *see also State v. R.W.*, 2022-Ohio-2771, ¶ 31 (8th Dist.), citing *State v. Dalmida*, 2015-Ohio-4995, ¶ 21 (1st Dist.), citing *State v. Fears*, 86 Ohio St.3d 329, 334 (1999) (jury is presumed to follow court's instruction to disregard defendant's appearance in jail clothing).

**{¶63}** Here, deputies were required to compel Appellant's attendance at the first day of trial due to his initial refusal to participate in the proceedings. The trial court attempted to address the issue at a video conference on the Friday before the trial, which Appellant also refused to attend. When Appellant appeared in court in jail attire and restraints, the trial court provided to Appellant the opportunity to waive his attendance at the trial, consistent with the intention he expressed in the days preceding the trial. Appellant chose instead to attend the trial. Having decided to attend the trial, Appellant made no contemporaneous objection to the jail attire and restraints, therefore the trial court was denied the opportunity to address the issue prior to voir dire. Finally, the trial court provided a curative instruction to the jury pool prohibiting them from considering Appellant's clothing as evidence of his guilt.

**{¶64}** Based on the foregoing facts, we find Appellant was not compelled to attend the trial in jail attire and restraints. The record reflects Appellant was provided the opportunity to appear in civilian clothing and without restraints, based on two pre-trial judgment entries memorializing Appellant's options. His jail attire and restraints were solely the consequence of his initial refusal to attend the trial. Appellant conceded multiple officers were required to transport him to the courthouse. Although he was transported to the courthouse for the expressed purpose of waiving his attendance, he decided instead to attend the trial, but raised no contemporaneous objection to his attire and restraints. To find Appellant was compelled by the trial court to attend the trial in jail attire and restrains would permit Appellant to create reversible error exclusively through his own conduct. Accordingly, we find Appellant's second assignment of error has no merit.

**ASSIGNMENT OF ERROR NO. 3**

**THE TRIAL COURT ERRED IN DENYING APPELLANT'S TIMELY REQUEST TO DISCHARGE [SECOND] APPOINTED COUNSEL, IN VIOLATION OF HIS RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.**

{¶65} The Sixth Amendment provides that a defendant must have the assistance of counsel for his defense. In determining whether to grant a request for substitute counsel, the trial court must balance the defendant's right to counsel of his choice against the public's interest in the prompt administration of justice. *State v. Davis*, 2007-Ohio-7216, ¶ 37 (7th Dist.), citing *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir.1996). The trial court should deny the motion for new counsel if it finds the defendant made the motion simply to delay the trial or did not make it in good faith. *Id.*

{¶66} The decision to remove court-appointed counsel and allow substitution of new counsel is within to the sound discretion of the trial court, which will not be reversed on appeal absent an abuse of discretion. *State v. Murphy,* 91 Ohio St.3d 516, 523 (2001); *State v. Brown,* 2014-Ohio-4420*,* ¶ 7 (7th Dist.)*.* An "abuse of discretion" implies an arbitrary, unreasonable, or unconscionable attitude on the part of the court. *State v. Adams*, 62 Ohio St.2d 151 (1980).

{¶67} We previously discussed the right to counsel of one's choice in situations where the defendant has appointed counsel versus when the defendant has retained counsel:

> An indigent defendant has a limited right to counsel of his choice, because the indigent defendant's options are limited by the fact that the court, not the indigent, ultimately controls the appointment of counsel. Due to the limitations on an indigent's autonomy in the selection of counsel, and the role the court plays in selecting counsel, when an indigent defendant makes a "timely and good faith motion requesting that appointed counsel be discharged and new counsel appointed, the trial court clearly has a

responsibility to determine the reasons for the defendant's dissatisfaction with his current counsel." [*U.S. v.*] *Iles* [, 906 F.2d 1122], 1130 (1990), quoting LaFave and Isreal, Criminal Procedure, 11.4 at 36 (1984). The reasons for this enhanced responsibility for inquiry, however, do not extend to a defendant . . . who has retained counsel: "it is clear that when an accused is financially able to retain an attorney, the choice of counsel to assist him rests ultimately in his hands and not in the hands of the State." *Wilson v. Mintzes*, 761 F.2d 275, 280 (1985). Moreover, . . . any request to change representation must be both timely and made in good faith, and is subject to the discretion of the trial court. There is simply no legal requirement that the trial court engage in any specific inquiry as to the reason a defendant wishes to seek other retained counsel.

*State v. Scott*, 2014-Ohio-2993, ¶ 22 (7th Dist.).

**{¶68}** We find the trial court did not abuse its discretion in this case. Appellant's oral motion on the first day of trial was untimely. A jury pool had been summoned and was present at the courthouse. Appellant had an opportunity to make his oral motion at the proposed video conference, which he refused to attend. Had the trial court granted Appellant's motion, the trial court would have had to appoint a third attorney, as the first appointed counsel was permitted to withdraw as counsel due to difficulties with Appellant after two requests. Second appointed counsel demonstrated an understanding of the case and had subpoenaed witnesses, despite Appellant's assertion that second appointed counsel was unfamiliar with the case and had issued no subpoenas. Finally, Appellant was acquitted of the aggravated trafficking charge due to second appointed counsel's representation.

**{¶69}** In summary, Appellant's request for new counsel was untimely and his stated reasons were contrary to the representations of counsel. Accordingly, we find Appellant's third assignment of error has no merit.

**{¶70}** We note that the attorney who filed and argued the motion to suppress was Appellant's first appointed counsel. The trial court permitted Appellant's first appointed counsel to withdraw after his second request, which occurred almost immediately

following the judgment entry overruling the motion to suppress. The only claim on appeal regarding legal representation relates to second appointed counsel. Thus, the suppression hearing transcript is irrelevant as the third assignment of error challenges the trial court's failure to dismiss Appellant's second appointed counsel.

## ASSIGNMENT OF ERROR NO. 4

**THE PROSECUTOR'S CLOSING ARGUMENT IMPROPERLY COMMENTED ON THE DEFENDANT'S FAILURE TO PRESENT EVIDENCE, THEREBY SHIFTING THE BURDEN OF PROOF IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.**

{¶71} Appellant did not object to the state's closing argument at trial. As a consequence, he has waived all but plain error review. Crim.R. 52(B) provides plain errors affecting substantial rights may be noticed although they were not brought to the attention of the court. To establish plain error, the defendant must demonstrate an obvious error that affected the outcome of trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "The accused is therefore required to demonstrate a reasonable probability that the error resulted in prejudice – the same deferential standard for reviewing ineffective assistance of counsel claims." *State v. Rogers*, 2015-Ohio-2459, ¶ 22. Plain error is a discretionary doctrine the appellate court may choose to use only with the utmost care in exceptional circumstances when required to avoid a manifest miscarriage of justice. *State v. Noling*, 2002-Ohio-7044, ¶ 62.

{¶72} "The prosecution is not prevented from commenting upon the failure of the defense to offer evidence in support of its case." *State v. Williams*, 23 Ohio St.3d 16, 20 (1986). "Such comments do not imply that the burden of proof has shifted to the defense, nor do they necessarily constitute a penalty on the defendant's exercise of his Fifth Amendment right to remain silent." *State v. Collins*, 89 Ohio St.3d 524, 527-28 (2000). "Hence, a prosecutor is not precluded 'from challenging the weight of the evidence offered in support of an exculpatory theory presented by the defense [or] arguing the defendant's

failure to provide evidence to support proffered theories of excuse or innocence.' " *State v. Encarnacion*, 2017-Ohio-5530, ¶ 16 (10th Dist.), quoting *Collins* at 528. "[T]he fact that one of the parties fails to call a witness who has some knowledge of the matter under investigation may be commented on." *State v. Petro*, 148 Ohio St. 473, 498 (1947).

{¶73} Here, Appellant identifies two sets of statements that allegedly shifted the burden of proof. First, Appellant claims the following passage from the state's closing argument constituted prosecutorial misconduct:

> Now, there's been no defense presented that the drugs did not belong to [Appellant] and his wife. [Appellant] rented the room. [His wife] signed certain extension slips, as you heard, the "reg slips," as they were called. But I ask you: What defense is there that they're not my drugs found in my room? There is none. Nothing.

(Trial Tr., Vol. I, at p. 259).

{¶74} Next, Appellant challenges the state's comments during rebuttal of closing argument on the dearth of evidence offered to support Appellant's theory of the case:

> In this room, what they are really trying to get you to believe is all of that, it was staged. Do you have any evidence that [Fitch] staged? No. You have counsel's arguments. You have no evidence from the stand.

(*Id.* at p. 274.)

{¶75} Appellant mischaracterizes the quoted portions of the state's closing argument in order to create a constitutional violation. In the first set of comments, the state was not referring to Appellant's right to remain silent. The state was merely emphasizing the fact that there was no evidence presented to establish ownership of the drugs found in the room, other than Appellant and his wife. Further, in second appointed counsel's closing argument, he asserted Fitch had staged the hotel room, including the drugs, before Detective Schwarck arrived. The prosecutor's comments during rebuttal were a response to second appointed counsel's argument and underscored the absence of evidence in the record to support the argument. As neither set of statements by the

prosecutor shifted the burden of proof, we find Appellant's fourth assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 5

**THE TRIAL COURT ERRORED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS.**

**{¶76}** The joint exhibits offered at the hearing on the motion to suppress were included with the trial exhibits in the record.  However, there is no hearing transcript from the motion to suppress in the record, which could have been due to the confusion created by the praecipe.

**{¶77}** The praecipe was filed on Appellant's behalf on February 6, 2025.  The certification is incomplete, so the attorney who filed it cannot be ascertained from the face of the document.  Option one is demarcated with an "x" and reads, "[i]nclude a complete transcript pursuant to App. R. 9(B)."  However, hand written beneath option two, which is *not* demarcated and reads, "[i]nclude a partial transcript pursuant to App. R. 9(B)," is "1-7-25 trial (Kristi); 1-13-25 sentencing (Vickie)."  The praecipe, with hand written portions represented in italics, reads in relevant part:

**TO THE CLERK OF THE TRIAL COURT:**

The Clerk shall immediately prepare and assemble the original papers and exhibits filed in the trial court in this case and a certified copy of the docket and journal entities, pursuant to App.R. 9(A):

In addition, the record in this appeal will **(check only one)**

*X* 1.   Include a complete transcript pursuant to App. R. 9(B).

_ 2.   Include a partial transcript pursuant to App. R. 9(B).

(a.) list the assignments of error you intend to present on appeal (App.R. 9(B)(5)(a)).

Case No. 25 BE 0006

*1-7-25 Trial (Kristi)*

*1/13/25 Sentencing (Vickie)*

> (b.) Enumerate here the segments of the trial and/ or hearings to be transcribed. State specifically the trial and/or hearings dates, the type of hearing, and the segments you want transcribed.

(2/6/25 Praecipe, p. 1.) Subsection (b.) is blank.

**{¶78}** Both parties cite to the hearing on the motion to suppress in their statement of facts. However, Appellant never disputes the factual underpinnings or the law applied by the trial court with respect to the motion to suppress in the fifth assignment of error. The state recognizes as much in its brief, writing, "Appellant does not actually give any reason why the motion to suppress was wrongly decided." (Appellee's Brf., p. 20.) Instead, Appellant advances a purely legal argument, that is, one cannot constructively possess something found in a space in which he or she has no reasonable expectation of privacy.

**{¶79}** In the fifth assignment of error in his appellate brief, Appellant acknowledges our standard of review and Ohio law as it relates to a former lodger's expectation of privacy in a vacated hotel room. He then provides a summary of the trial court's decision on the motion to suppress, and the jury's verdict on the drug possession charge.

**{¶80}** The sum total of Appellant's argument in his fifth assignment of error is as follows:

> Here, the state cannot have it both ways. The state argued, and the court agreed, that Appellant was evicted from the hotel room prior to the search by law enforcement when the drugs were discovered and, therefore, no search warrant was needed. Furthermore, the room had been accessed and searched by hotel staff prior to law enforcement entry (Volume II Tr. 57-17-58:25). Simply put, if Appellant still had legal possession of the hotel room then the search was invalid. Alternatively, if Appellant no longer had

legal possession of the hotel room then the theory of constructive possession fails.

Reversal on this issue is appropriate.

(Appellant's Brf., p. 25.)

**{¶81}** Appellant cites no case law in support this contention. Appellate Rule 16(A), captioned "Brief of the appellant," reads in relevant part:

The appellant shall include in its brief, under headings and in the order indicated, all of the following:

. . .

(7) An argument containing contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to authorities, statutes, and parts of the record on which appellant relies.

**{¶82}** Appellant's fifth assignment of error is essentially a conclusion, devoid of any analysis or case citation. Insofar as Appellant has offered no analysis whatsoever, we are unable to discern the legal basis for his argument.

**{¶83}** Appellant appears to unwittingly advance an "automatic standing" argument. In *Jones v. United States*, 362 U.S. 257 (1960), the United States Supreme Court held that automatic standing applied to any person charged with an offense in which possession is an essential element, and further, that any person legitimately on the premises where a search takes place could challenge the lawfulness of the search.

**{¶84}** However, these bases for automatic standing were subsequently rejected by the United States Supreme Court. Relevant to this assignment of error, the first theory was rejected in *United States v. Salvucci*, 448 U.S. 8 (1980). In reaching its decision in *Salvucci*, the Court noted the reasons which gave rise to the automatic standing rule were no longer present. The majority observed that its decision in *Simmons v. U.S.*, 390 U.S. 377 (1968), had resolved the major concern expressed by the Court in *Jones*, namely the

Case No. 25 BE 0006

government ought not to be allowed to assert the defendant possessed goods for purposes of criminal liability while simultaneously asserting that he did not possess them for purposes of claiming the protections of the Fourth Amendment.

**{¶85}** The *Simmons* Court removed this impediment to the assertion of Fourth Amendment rights by holding, in part, "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." *Simmons* at 394. The *Simmons* Court found no problem with the concern in *Jones* that the government was being permitted to take advantage of contradictory positions since its decision in *Rakas v. Illinois*, 439 U.S. 128 (1978) made clear that a prosecutor may simultaneously maintain, without legal contradiction, that a defendant criminally possessed the seized goods but was not subject to a Fourth Amendment deprivation.

**{¶86}** In summary, Appellant appears to concede the trial court correctly concluded he had no reasonable expectation of privacy in room 216 because he does not challenge that finding on appeal, other than to argue it is inconsistent with his possession conviction. However, the United State Supreme Court has recognized that a prosecutor may simultaneously maintain, without legal contradiction, that a defendant criminally possessed seized goods but was not subject to a Fourth Amendment deprivation. Accordingly, we find Appellant's fifth assignment of error has no merit.

**{¶87}** Had Appellant challenged the trial court's rationale underlying the decision on the motion to suppress, we would have had to resolve the confusion created by the contents of the praecipe. However, we reviewed the fifth assignment of error and concluded Appellant suffered no prejudice as a consequence of the failure to include a copy of the transcript of the hearing on the motion to suppress because Appellant's challenge is a legal argument not a factual argument.

**{¶88}** Appellant did not specifically challenge the search of the pouch in his motion to suppress, or in his reply brief to the motion, which was filed *after* the hearing. Likewise, Appellant did not specifically challenge the search of the pouch on appeal. Rather, he stipulated to the fact that the contraband was found in plain sight. Sua sponte review of the constitutionality of the search of the pouch would materially prejudice the state, which had no opportunity to develop the record as it relates to the pouch, or to advance any

legal argument with respect to the search. The Ohio Supreme Court has observed that " 'appellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them.' " *State v. Quarterman*, 2014-Ohio-4034, ¶ 19, quoting *State v. Bodyke*, 2010-Ohio-2424, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part).

## ASSIGNMENT OF ERROR NO. 6

**THE CUMULATIVE ERRORS COMMITTED IN THIS CASE DEPRIVED APPELLANT A FAIR TRIAL.**

**{¶89}** Under the doctrine of cumulative error, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). In other words, where a reviewing court finds multiple instances of harmless error, a conviction may be reversed based on their cumulative effect. *State v. Knight*, 2024-Ohio-2176, ¶ 108 (7th Dist.). As we find the trial court committed no harmless error in this case, we further find Appellant's sixth assignment of error is meritless.

## CONCLUSION

**{¶90}** For the foregoing reasons, Appellant's conviction is affirmed.

Robb, P.J., concurs.

Hanni, J., dissents with dissenting opinion.

Hanni, J., dissenting.

{¶91} With regard and respect to my colleagues, I must dissent from the majority opinion. Without a transcript of the suppression hearing, I would decline to rule on Appellant's assignments of error challenging the trial court's denial of his motion to suppress. Relatedly, without this transcript, I question the warrantless search and seizure of contents found in the pouch in the hotel room. The pouch was not in plain view and an airline ticket found inside the pouch bore the name of Appellant's wife. Yet, the vials of drugs found in that pouch were attributed to Appellant.

{¶92} While I agree with most of the majority's opinion, I disagree that Appellant failed to fulfill his duty to provide the suppression hearing transcript and that the transcript was not necessary. Appellant's counsel ordered a complete transcript of the record. On the praecipe form, Appellant's counsel placed an "X" next to number one on the praecipe form requesting a "complete transcript."

{¶93} Number two on the praecipe stated a request for a partial transcript, with subsection (a) asking for a listing of the assignments of error that were going to be presented on appeal. Subsection (b) of this section requested enumeration of the segments of the trial and/or hearing to be transcribed. Appellant's counsel did not place an "X" next to number two requesting a partial transcript. Still, he handwrote "1-7-25 trial and 1-13-25 sentencing" in subsection (a) and left subsection (b) blank.

{¶94} However, Appellant's counsel filed a motion for preparation of proceedings at the state's expense and specifically requested that the transcript include: "all plea and proceedings, trial proceedings and all post-trial and sentencing proceedings." The court granted Appellant's motion and directed the court reporter "to prepare a complete transcript of the entire record for submission to the Court of Appeals." There is no indication that the hearing was ever transcribed.

{¶95} App.R. 10(A) provides in relevant part that:

[i]f the appellant has complied with the duty to make reasonable arrangements for transcription of the recorded proceedings under App.R. 9(B) and the duty to make reasonable arrangements to enable the clerk to

assemble and transmit the record under this division, then the appellant is
not responsible for any delay or failure to transmit the record.

Local R. 3.2(C) provides that "[a] praecipe ordering all or part of the trial transcripts will not be deemed to be complete unless signed and dated by the court reporter."

{¶96} The praecipe in this case is signed and dated by a court reporter. I would therefore find that Appellant fulfilled his duty of requesting the transcript and he is not responsible for the failure to transcribe the transcript.

{¶97} I would further find that the transcript of the suppression hearing was necessary for review of Appellant's assignment of error concerning the denial of his motion to suppress. The majority concludes that, "Appellant never disputes the factual underpinnings or the law applied by the trial court." (Opinion at ¶ 78). The majority continues, "[i]nstead, Appellant advances a purely legal argument, that is, one cannot constructively possess something found in a space in which he or she has no reasonable expectation of privacy." (Opinion at ¶ 78).

{¶98} However, Appellant's fifth assignment of error presents more than a legal argument. In fact, Appellee responds with citations to the facts presented by the manager at the suppression hearing. (Appellee's Br., 20-21). Appellant asserts the legal argument that he lacked constructive possession if he lacked legal possession of the hotel room. But he also directs us to the factual portion of his brief which he asserts was developed at the motion to suppress hearing. (Appellant Br., 25). He explains that the trial court overruled his motion to suppress because it found, based on the exhibits and the manager's testimony at that hearing, that Appellant's rental of the hotel room had expired more than 27 hours at the time of the police search. (Appellant Br., 25).

{¶99} For these reasons, I would reserve ruling on Appellant's fifth assignment of error and order a transcript of the suppression hearing.

{¶100} Relatedly, I question the police's warrantless search and seizure of contents found in the pouch in the hotel room. Detective Schwarck testified he found vials of methamphetamine in the purse-like pouch that was not out in the open but located alongside the bed. (Trial Tr., 92). He stated that the pouch also contained an airline ticket inside bearing the name of Appellant's wife. (Trial Tr., 92-93). However, it appears

Case No. 25 BE 0006

that the pouch was not in plain view and belonged to Appellant's wife. Yet the vials found in that pouch were attributed to Appellant.

**{¶101}** I acknowledge that Mr. Fitch could give consent to law enforcement to search the hotel room once he either evicted Appellant or Appellant was arrested on the premises. However, testimony at trial indicated that after Appellant was arrested on December 22, 2022, he was released on bond. Testimony also revealed that a police officer drove Appellant back to the hotel and entered Appellant's hotel room "with his consent to retrieve a few items of personal property."

**{¶102}** Yet, Mr. Fitch testified that he employed the lock-out key on December 22, 2022. (Trial Tr., 199). He testified he commonly encountered long-term guests who were tardy in acquiring new reservations to extend their stays, so after he employed the lock-out key, he allowed a 24-hour grace period for guests who may have left personal property in their rooms to retrieve their property. (Trial Tr., 199). Mr. Fitch explained that he accessed the room of Appellant and his wife on December 22, 2022, noted the considerable amount of personal property therein, and left the room undisturbed for the 24-hour grace period. But Appellant returned to the hotel on the night of December 22, 2022 after he bonded out of jail, and he consented to a police officer accessing his room to retrieve some items that he requested. If Mr. Fitch had control and possession of the room, Appellant would not have been able to consent to the police officer entering the room and retrieving items that Appellant requested. If Appellant still had control over the room, then officers should have obtained a warrant for items in the room that were not in plain view and unopened. Without more information or testimony from the suppression hearing, this issue is unclear.

**{¶103}** Based upon the lack of a suppression hearing transcript, and related concerns over the warrantless search by police of the unopened pouch in the hotel room, I would order a transcript of the suppression hearing before ruling on Appellant's assignments of error numbers 3 and 5.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**